IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOSHUA RESHI DUDLEY, ) | |
| ) | |
| Plaintiff , ) | |
| ) | |
| v. ) | Case No. 7:11-cv-04170-RRA |
| ) | |
| OFFICER GANDY, *et al.,* ) | |
| ) | |
| Defendants. ) | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Joshua Reshi Dudley, hereinafter referred to as the plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at the Tuscaloosa County Jail in Tuscaloosa, Alabama.  Named as defendants in the complaint are Correctional Officer Gandy; Sheriff Ted Sexton; Chief Bailey; Lieutenant Jackson; Correctional Officer Samples; Correctional Officer Channell; Correctional Officer Little; Correctional Officer Williams; Dr. Pointer; and Nurse Elizabeth. The plaintiff seeks compensatory damages, as well as injunctive relief.  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  Thus, under § 1915A, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  Nevertheless, in order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

PLAINTIFF'S FACTUAL ALLEGATIONS

The plaintiff is an inmate in the Tuscaloosa County Jail in Tuscaloosa, Alabama.  He filed this action alleging his rights were violated in association with two separate incidents at the jail during July 2011.  The first incident occurred during the early morning hours of July 13, 2011.  The plaintiff states that he was in a cell with two other inmates where one of the inmates (Courtney Walker) had placed a blanket over the light. (Doc. #1, p. 5).  When Officers Little and Channel came into the cell to remove the blanket, a fight ensued between the officers and inmate Walker. *Id*. When Officer Channell called for backup, Officers Gandy, Samples, and Williams responded, at which point inmate Walker ceased resistance

and offered to be handcuffed. *Id*. at 5.  Instead of handcuffing Walker, Officer Gandy allegedly grabbed him by the neck and slammed his head against the wall, while Officer Samples punched him several times. *Id*. at 5.  While this was occurring, the plaintiff states that he was "stuck in a corner and pleaded for them to stop." *Id*. at 5.  Officer Gandy then allegedly struck the plaintiff in the face with handcuffs and the other officers began assaulting him as well. *Id*. at 5.  Even after he placed his hands behind his back to be handcuffed, the plaintiff states that the officers continued to assault him, with Officer Gandy continuing to hit him with a hard object and Officer Williams choking him, tripping him, and running his head into a wall. *Id*. at 6. The plaintiff was then allegedly dragged into another cell where Officer Gandy beat his head against a concrete bench. *Id*. at 6.  The plaintiff sustained injuries serious enough to require staples and stitches in his head.  Subsequently, Sheriff Sexton issued a warrant for the plaintiff's arrest and "falsely" charged the plaintiff with three counts of second degree assault.

  The second incident occurred on July 26, 2011.  On that date, Officer Gandy came into the cellblock and began harassing the plaintiff, telling him that it "wasn't over" and that he was going to kill him before the end of the day.[1] (Doc. #1, p. 7).  Gandy allegedly told the plaintiff that he had to go deal with another inmate but that he would be back for the plaintiff "afterwards." *Id*.  When the plaintiff observed Gandy "tussling" with the other inmate, he

---

[1] The plaintiff states that he took the threats "highly personal" because of the previous incident on July 13, 2011. (Doc. #1, p. 7).

"flipped out" and apparently assaulted Gandy.[2] *Id*. As a result, he was charged with attempted murder, conspiracy to commit murder, and escape. *Id*. The plaintiff complains that he never intended to kill Gandy but was merely trying to protect himself and that he acted alone and not in conspiracy with others. As a result, he states that he was "falsely accused and charged with charges [his] actions did not deserve." *Id*.

DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). When force is applied by prison officials, any Eighth Amendment inquiry must concentrate on whether the force was applied in a good faith effort to maintain discipline, or was carried out maliciously or sadistically for the purpose of causing harm. Id. at 320. In *Hudson v. McMillian*, the Supreme Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. 503 U.S. 1, 7 (1992).

---

[2] He blames his actions, at least in part, on the fact that the medical staff has prescribed him medications which cause him to "flip out." He states that he informed the medical staff of this problem, but "got no results." (Doc. #1, p. 7).

Applying these standards to the facts set forth in the complaint, it is clear that the plaintiff has initially stated a claim of excessive force against Officers Gandy, Samples, Channell, Little, and Williams with regard to the July 13, 2011, incident.  Although the serious injuries incurred by the plaintiff were the result of a wider disturbance, the plaintiff has alleged facts which, taken as true for purposes of this review, show that he had not caused nor was participating in the disturbance and was not acting in a threatening manner towards the officers.  The plaintiff alleges that the officers continued to attack him even after he offered to be handcuffed and it appears that the plaintiff could not have reasonably been considered a threat to the officers, at least at the time the additional force was applied.  Accordingly, the facts presented by the plaintiff indicate that there was little or no need for the use of force, at least to extent administered by Gandy and the other officers.  Additionally, the plaintiff has alleged significantly more than *de minimis* injury resulting from the encounter with the officers.  Accordingly, the magistrate judge recommends that the excess force claim against Officers Gandy, Samples, Channell, Little, and Williams arising from the July 13, 2011, incident, be referred to the undersigned for further proceedings.

With regard to this first incident, the plaintiff also complains that Sheriff Sexton "falsely" charged him with three counts of second degree assault.  Whether defined as a claim of false arrest or one of malicious prosecution, the plaintiff has failed to present sufficient facts to overcome Sheriff Sexton's qualified immunity from suit.  In order to state

a valid claim under § 1983, the plaintiff must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003); *quoting Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir.1995).  In reviewing a complaint, the court "need only accept 'well-pleaded facts' and 'reasonable inferences drawn from those facts.'" *Id*. *quoting Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992).

In the present case, the plaintiff's general allegations are not enough to show that they would, if proved, overcome the defense of qualified immunity afforded Sheriff Sexton.[3] Although he asserts the general premise that he was falsely charged with second degree assault, the plaintiff fails to support that premise with facts to show that, under the totality of the circumstances that existed at the time, Sheriff Sexton lacked probable cause to make the arrest.  In fact, the plaintiff's complaint shows that he was involved in a violent altercation at the jail from which it seems reasonable that charges of assault could follow, whether or not ultimately provable.  As long as his belief was reasonable, Sheriff Sexton does not have to ultimately be correct in his belief that he had probable cause to charge the plaintiff. *Rodriguez v. Farrell*, 280 F.3d 1341, 1347 (11th Cir. 2002).  In other words, even if the Sheriff Sexton lacked actual probable cause to make the arrest in question, an officer

---

[3] It is important to note that qualified immunity not only shields government actors from liability, but also from suit as well.  Questions of qualified immunity should therefore be decided at the earliest possible stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

who makes an arrest without probable cause is nevertheless entitled to qualified immunity if there was *arguable* probable cause for the arrest. *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir.1999). Arguable probable cause exists if a reasonable police officer, knowing what the defendant knew, would have believed that there was probable cause for the arrest. *Id*. At the very least, the plaintiff has failed to assert facts which would overcome Sheriff Sexton's right to assert qualified immunity based upon arguable probable cause.[4]

With respect to the July 26, 2011, incident, it does not appear that the plaintiff is asserting an excessive force claim, but complains that he was "falsely"charged with additional crimes of conspiracy to murder, attempted murder, and escape. However, for the reasons stated above, the plaintiff has failed to plead a valid claim of false arrest or malicious prosecution against Sheriff Sexton.

Additionally, the plaintiff appears to assert a claim against two members of the jail medical staff based upon the allegation that they allegedly "forced him to take" medications which caused him to "flip out."[5] As best as can be determined from the wording of the complaint, the plaintiff contends that his actions on July 26, 2011, in assaulting Officer Gandy, were the result of being on the medications prescribed by the medical staff, and that he had previously informed the medical staff that the medication made him "flip out."

---

[4] In a technical sense, it is not clear that the plaintiff can be falsely "arrested" since he is already in custody. Therefore, the plaintiff's claims may be more properly described as malicious prosecution. In any event, our courts "use the same 'arguable probable cause' standard in the qualified immunity context for § 1983 claims for both false arrest and malicious prosecution, as both require a violation of the Fourth Amendment." *Grider v. City of Auburn*, 618 F.3d 1240, 1257 n. 25 (11th Cir. 2010).

[5] He contends he was "drugged" on "hound dog medication" and "cojint" (sic). (Doc. #1, p. 3).

In examining the plaintiff's claim, it is important to remember that medical treatment of prisoners violates the Eighth Amendment only when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle*, 429 U.S. at 106; *McElligot v. Foley*, 182 F.3d 1248 (11th Cir. 1999). Likewise, a mere difference of opinion between an inmate and the prison medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment. *Harris*, supra at 1505.

Reviewing the plaintiff's complaint in light of the above standards, it is clear that he has failed to state a claim against the medical defendants. Although he communicated a disagreement with the medical staff's choice of medications, he presents nothing to show that the staff engaged in acts or omissions which shock the conscience. In order to state an Eighth Amendment claim, the plaintiff must show that he suffered from an objectively serious medical need and that prison officials were subjectively indifferent to that need. *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). In this instance, not only does the plaintiff fail to identify the particular medical condition being treated by the medical staff, but he presents nothing to show how the medical staff was deliberately indifferent, as

opposed to merely negligent, in addressing that need. As stated above, the mere fact that he disagreed with the medical staff's approach is not sufficient to state an Eighth Amendment claim. Additionally, even if the defendants' choice of medications was the result of negligence or malpractice, that alone would not be sufficient to proceed with a claim under § 1983.[6] The plaintiff has simply failed to present sufficient facts to evidence "an attitude of deliberate indifference" on the part of the defendants. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). In other words, the plaintiff's bare allegations do not adequately show how the medical defendants acted "intentionally or recklessly" in caring for the plaintiff's medical needs. The complaint therefore fails to present facts which show the required "punitive intent" on the part of the defendants. *Id*.

The plaintiff names Chief Bailey and Lieutenant Jackson as defendants, but makes no allegations against them in the body of the complaint. To the extent he seeks to assert liability against these defendants on the basis of their supervisory capacities, his complaint is without merit. It is well settled that "[t]here is no *respondeat superior* liability under § 1983." *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995) (*citing Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978) and *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994). Supervisory personnel may be held accountable for the constitutional violations of their subordinates only upon proof that they (1) were directly involved in the wrongdoing; (2) failed to remedy a wrong after learning

---

[6] "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106.

of it through report or appeal; (3) created or allowed a policy under which the violation occurred; or (4) were grossly negligent in managing the subordinates who caused the wrongdoing. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986). Absent some allegation that Chief Bailey and/or Lieutenant Jackson knew of, sanctioned, participated in or were otherwise "affirmatively link[ed]" to the acts here complained of, the claim against them is insufficient to state a cause of action under § 1983.[7]

## HABEAS TYPE RELIEF

As part of the relief demanded in the complaint, the plaintiff seeks to "overturn all cases received by railroad procedures." (Doc. #1, p.4). To the extent that the plaintiff seeks to assert a challenge to any criminal proceedings presently pending against him, he may do so in the federal court only by way of a petition for writ of *habeas corpus*. Therefore, such relief is not appropriate in this action brought pursuant to § 1983. *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Watson v. Briscoe*, 554 F.2d 650 (5th Cir. 1977). Even in the *habeas corpus* context, federal courts will abstain from interfering in pending state criminal prosecutions except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669

---

[7] In this regard, the plaintiff does state that he "signed a grievance on Officer Gandy once before" regarding Gandy's "devious and constant threats." (Doc. #1, p. 7). Although a history of widespread abuse by a subordinate may be enough to put a supervisor on notice sufficiently to establish §1983 liability for the subordinate's actions, those abuses must be "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Id*. at 802, *citing Brown v. Crawford* 906 F.2d 667, 671, (11th Cir. 1990). The plaintiff has not pled sufficient facts to meet this standard.

(1971); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973). This abstention doctrine assures state courts an opportunity to consider claims before they will be considered by the federal courts. Accordingly, before a petitioner may maintain a federal *habeas corpus* action, he must first exhaust all available state remedies. *Georgalis v. Dixon*, 776 F.2d 261 (11th Cir. 1985); *Walker v. Zant*, 693 F.2d 1087 (11th Cir. 1982). The doctrine of comity requires that the State of Alabama be afforded the opportunity to consider an alleged error before federal *habeas corpus* relief is sought. Therefore, not only is *habeas corpus* relief not appropriate in this action, but it may be premature for the plaintiff to assert a separate federal *habeas* petition until such time as he has exhausted all state remedies.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that all claims in this action, except the excessive force claim against defendants Gandy, Samples, Channell, Little, and Williams arising from the July 13, 2011, incident, be DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1915A(b)(1). The magistrate judge further RECOMMENDS that the excessive force claim against Gandy, Samples, Channell, Little, and Williams be referred to the undersigned magistrate judge for further proceedings.

Plaintiff may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk. Failure to file written

objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. Objections not meeting this specificity requirement will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff.

DATED this 22nd day of May, 2012.

/s/ Robert R. Armstrong
Robert R. Armstrong, Jr.
United States Magistrate Judge