FILED

2014 Aug-04  AM 11:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

JOSHUA RESHI DUDLEY,       )
                                    )
          Plaintiff,       )
                                    )
vs.                               )     Case No. 7:11-cv-04170-JHE
                                    )
OFFICER GANDY, *et al*.,     )
                                    )
          Defendants.     )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Joshua Reshi Dudley filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging he has been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration in the Tuscaloosa County Jail, in Tuscaloosa, Alabama. The remaining Defendants in this action are Correctional Officers Percy Sample, Lance Channell, Robert Little, Dennis Williamson, and Alan Gandy. Plaintiff seeks compensatory damages for alleged excessive force occurring on July 13, 2011. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

### I. Procedural History

On June 19, 2014, the court entered an order dismissing all claims in this matter, except the excessive force claim against Defendants Gandy, Sample, Channell, Little, and Williams. (Doc. 10). On June 26, 2012, the court entered an Order for Special Report directing copies of the complaint be forwarded to remaining Defendants and requesting they file a special report addressing Plaintiff's factual allegations with regard to his excessive force claim. (Doc. 11).

The parties were advised the special report, if appropriate, might be treated as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*). On October 19, 2012, Defendants filed a special report accompanied by affidavits and copies of certain jail documents pertaining to Plaintiff and the events made the basis of his claims. (Doc. 24). On June 28, 2013, the parties were notified the court would construe Defendants' special report as a motion for summary judgment and Plaintiff was notified he would have twenty days to respond to the motion by filing affidavits or other material if he chose. (Doc. 26). Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). After granting two extensions, Plaintiff, through counsel, submitted a response to summary judgment on September 16, 2013, (doc. 33), and supplemented that response on October 11, 2013, (doc. 35). This matter is now before the court on Defendants' special report, being construed as a motion for summary judgment, (doc. 24), and Plaintiff's responses thereto, (docs. 33 & 35).

## II. Summary Judgment Standard

Because Defendants' special report is construed as a motion for summary judgment, the Court must determine whether there are no genuine issues of material fact and the moving parties, Defendants, are entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely

rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

### III. Factual History

Applying the above standard to the facts before the Court, the following facts are undisputed or, if disputed, are taken in a light most favorable to Plaintiff.

Plaintiff is an inmate confined in the Tuscaloosa County Jail.  His claims in this matter arise from an incident which occurred at the jail during the early morning hours of July 13, 2011.  He was in a cell with two other inmates at that time when one of the other inmates placed a blanket over the light.  (Doc. 1 at 5).  Although the blanket was taken down in compliance with Officer Channell's first request to remove it, it was replaced by the time he returned, and the inmates would not remove it when asked a second time.  (Doc. 24-5 at 3).  When Officers Channell and Little entered the cell to remove the blanket, one of the inmates (Courtney Walker) attacked Officer Channell, striking him several times in the face, and a fight ensued.  (*Id*. at 4 &

5).  Officers Gandy, Sample, and Williamson responded to Officer Channell's call for backup, and it is at this point the parties' allegations begin to conflict.  Plaintiff states, when backup officers arrived inmate Walker ceased resistance and offered to be handcuffed.  (Doc. 1 at 5).  However, instead of handcuffing inmate Walker, Officer Gandy grabbed him by the neck and slammed his head against the wall, while Officer Sample punched him several times.  (*Id*. at 5).  During this time, Plaintiff states he was "stuck in a corner and pleaded for them to stop."  (*Id*. at 5).[1]  Officer Gandy then struck Plaintiff in the face with handcuffs, and the other officers began assaulting him as well. (*Id*. at 5).  Even after he complied with the officers' command to place his hands behind his back to be handcuffed, they continued the assault, including Officer Gandy who screamed several times "he was going to kill [Plaintiff]," while hitting him with a hard object and trying to drag him back into the cell.  (*Id*. at 5-6).  Officer Williamson then grabbed him and "choked him down the hallway" before tripping him onto his face and running his head into a wall.  (*Id*. at 6).  At some point, Plaintiff was dragged into another cell where Officer Gandy beat his head against a concrete bench.  (*Id*. at 6).[2]

It is undisputed Plaintiff sustained injuries serious enough to require staples and stitches to his head.  (*Id*. at 6).  He submits medical records from DCH Medical Center pertaining to an

---

[1] In contrast, Officer Sample testifies when he arrived on the scene he observed Plaintiff "actively resisting officers by throwing punches and trying to kick officers."  (Doc. 24-5).  Sample states he attempted to handcuff Plaintiff but was only able to apply one cuff before Plaintiff broke free and began "swinging the other end of the cuff as a weapon."  (*Id*. at 2).  Sample states it took "several officers" to restrain Plaintiff.  (*Id*. at 2).  Officers Channell and Little also observed Plaintiff striking and kicking at officers, and both confirm it took three officers to gain control of him.  (*Id*. at 4 & 6).  None of the affidavits directly refute any of Plaintiff's assertions beyond the disputed factual statement Plaintiff was striking and kicking officers and the legal conclusion they did not observe the use of excessive force against Plaintiff.  (*Id.* at 2, 4, & 6).

[2] The Court notes Defendants' special report contains no affidavit from defendants Gandy and Williamson.  (Doc. 24).  Consequently, the allegations against them in the sworn complaint remain largely unrefuted.

emergency room visit on July 13, 2011.[3]  (Doc. 35).  These records indicate he was treated for a 3cm wound to the top of his head which was closed with three staples, a 2cm wound to the "left parietal occipital" which was closed with three staples, and a 2cm wound to his left forehead which was closed with sutures.  (*Id*. at 10-11).  Plaintiff was also provided a right wrist splint because of a sprain and abrasion, and it is indicated he suffered from a right side chest wall abrasion and contusion, a right pelvic contusion, and a neck and back contusion.  (*Id*. at 11-12).

### IV. Discussion

As a preliminary matter, Defendants' counsel indicates Plaintiff was a pre-trial detainee at the time of the events made the basis of his claims.  (Doc. 24 at 1-2).  A pre-trial detainee's rights as a prisoner are governed by the Fourteenth Amendment rather than the Eighth Amendment, which applies to convicted persons.  *See Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 & n.3 (11th Cir. 1994) (citing *Ingraham v. Wright*, 430 U.S. 651, 671–72 n.40 (1977)).  However, such a claim "is analyzed as if it were an excessive force claim under the Eighth Amendment."  *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 n.5 (11th Cir. 2009); *accord Spaulding v. Poitier*, 548 Fed. App'x. 587, 593 (11th Cir. 2013).

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  When prison officials apply force, any Eighth Amendment inquiry must concentrate on whether the force was applied in a good-faith effort to maintain discipline, or was carried out maliciously or sadistically for the purpose of causing harm.  *Id*. at 320.  In *Hudson v. McMillian*, the Supreme Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary.  They include:

---

[3] Plaintiff's complaint alleges the events at the jail occurred sometime between 2:00 a.m. and 6:00 a.m. on July 13, 2011.  The DCH medical records are dated July 13, 2011, 6:09 a.m.

(1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the prison official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. 503 U.S. 1, 7 (1992).

Applying these standards to the record before the court, it is clear genuine issues of fact exist with respect to Plaintiff's excessive force claim, which therefore precludes summary judgment at this time.   Although another inmate had caused a disturbance which warranted action by jail officials, Plaintiff's sworn complaint indicates the offending inmate (Walker) had ceased his resistance and offered to be handcuffed.  (Doc. 1 at 5).  During these events, Plaintiff contends he remained in a corner pleading for officers to stop their assault on inmate Walker and complied with the officers' orders to place his hands behind his back to be handcuffed.  (*Id*. at 5-6).  Although Plaintiff acknowledges a disturbance, his allegations, taken as true for purposes of summary judgment, show no need for the use of physical force against him individually, much less to the extent alleged.  Although three of Defendants have submitted affidavits, (doc. 24-5), which indicate Plaintiff was hitting and kicking responding officers, these allegations merely present the court with a genuine dispute of material fact which must be resolved by the trier of fact.

Genuine issues of fact also exist with respect to the second *Hudson* factor.  Although Defendants submit affidavits which indicate Plaintiff was fighting officers, these assertions are directly refuted by Plaintiff's sworn complaint in which he contends he was initially attacked by Officer Gandy while standing in a corner of the cell and continued to be attacked by the officers even after being knocked to the ground and subsequently offering to be handcuffed.  (Doc. 1 at

5-6).[4]  More importantly, neither Officer Gandy nor Officer Williams submit affidavits to refute Plaintiff's assertions he was choked, tripped, and dragged half-conscious into another cell where his head was beaten against a concrete bench, (doc. 1 at 6).  A reasonable jury could find these actions exceeded the need for the use of force under the circumstances and were undertaken for reasons other than a good-faith effort to restore security or discipline.[5]

The *Hudson* decision also requires this court to analyze the threat reasonably perceived by the officers.  Although Plaintiff acknowledges an initial confrontation between inmate Walker and Officers Channell and Little, Defendants submit nothing to refute Plaintiff's assertion the officers renewed their physical aggression *after* Walker had stated he did not want to fight anymore, had placed his hands behind his back to be handcuffed, and was under the control of the officers.  (Doc. 1 at 5-6).  There is nothing submitted by Defendants which refutes Plaintiff's sworn allegation Officer Gandy renewed the confrontation by grabbing Walker by the neck and slamming his head against the wall. (*Id*. at 6).  At the very least, there is a genuine issue of fact as to whether Plaintiff could have reasonably been perceived as a threat at the point he offered to be cuffed.  Based on the record before the court, it seems clear a reasonable jury could find Defendants acted unreasonably in concluding Plaintiff presented a threat commensurate with the severe physical response taken against him.

---

[4] Two of Defendants who submitted affidavits (Sample and Little) deny striking Plaintiff during the course of the disturbance.  (Doc. 24-5 at 2 & 6).  However, this simply presents the court a genuine issue of fact in light of Plaintiff's assertion "all the guards started assaulting [him]." (Doc. 1 at 5).

[5] With respect to the subjective intentions of Defendants, none of the evidence submitted refutes Plaintiff's allegation Officer Gandy, while striking Plaintiff with a hard object, repeatedly yelled that he was going to kill Plaintiff, (doc. 1 at 6).  While not dispositive proof of malicious intent, "threatening comments are circumstantial evidence of mental state that can be considered in determining the intent underlying the use of force." *Cockrell v. Sparks*, 510 F.3d 1307, 1312 (11th Cir. 2007) (citing *Bozeman v. Orum*, 422 F.3d 1265, 1271 n. 11 (11th Cir. 2005)).

Other than conclusory statements they failed to observe anyone use excessive force against Plaintiff, (doc. 24-5 at 2, 4, & 6), Defendants submit nothing to address the fourth *Hudson* factor regarding any efforts they may have taken to temper their response.  Conversely, Plaintiff's sworn complaint sets forth allegations which demonstrate Defendants took little if any effort to control their response to the disturbance.  They submit nothing to directly refute Plaintiff's assertions at least two of the officers aggressively renewed force after inmate Walker conceded, all of the officers continued to subject Plaintiff to physical attack after he offered to be handcuffed, and at least one of the officers continued to use force against Plaintiff after he had been rendered "half conscious" and was awaiting medical attention.  (Doc. 1 at 5-6).  At the very least, genuine issues of fact exist with respect to whether or not Defendants made any effort to temper the severity of their response.

With regard to the final *Hudson* factor, it is undisputed Plaintiff suffered serious physical injury requiring his transport to the emergency room of a local hospital, where he required sutures and staples to repair some of his injuries.  These injuries, as described in the medical records, are not only numerous but are consistent with the allegations of force described by Plaintiff.  (Doc. 35).

On a procedural note, Defendants' contend Plaintiff failed to exhaust Tuscaloosa County Jail administrative remedies with regard to his claims herein.  (Doc. 24 at 5).  However, Plaintiff states in his sworn complaint he submitted a prisoner grievance from which he obtained "no results." (Doc. 1 at 2).  His statement is not refuted by the affidavits or other evidence.[6]  Under

---

[6] Counsels' unsupported statements in a memorandum are not evidence for purposes of summary judgment.  *See Bailey v. Astrue*, 2012 WL 5907384 at *2 n. 4 (M.D. Ala. Nov. 26, 2012); *Schambeau Properties v. Waffle House*, 2011 WL 6934817 at *6 n. 16 (S.D. Ala. Dec. 30, 2011); *Nieves v. University of Puerto Rico*, 7 F.3d 270, 280 (1st Cir. 1993).  Defendants attach a copy of the Jail Grievance Procedures, (doc. 24-4), proving only the existence of administrative procedures, not that Plaintiff failed to exhaust them.

the two-step analysis in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008), Plaintiff has made a facial showing of exhaustion (because the Court assumes his assertions to be true), and Defendants have not presented any evidence to meet their burden of proving he has not exhausted his remedies.

Finally, Defendants' contention Plaintiff's claims are barred by the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), is without merit.  This assertion is ostensibly based upon Defendants' exhibit 3, (doc. 24-3), which contains copies of November 3, 2011, Grand Jury indictments against Plaintiff for violations of Ala. Code § 13A-6-1.[7]  In *Heck*, the Supreme Court held a § 1983 claim for damages, proof of which would render a conviction or sentence invalid, is not ripe until such time as it is shown the conviction or sentence has been overturned on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  However, the Eleventh Circuit has clearly stated a § 1983 suit is barred only if it would *necessarily* imply the conviction was unlawful and, "as long as it is *possible* that a § 1983 suit would not negate the underlying conviction, then the suit is not *Heck* barred." *Dyer v. Lee*, 488 F.3d 876, 879-80 (11th Cir. 2007) (emphasis added).  In *Dyer*, the Court discussed the application of *Heck* to claims of excessive force against officers by an individual who was eventually convicted of resisting arrest arising from the same events.  There, the court reasoned, for the excessive force claim to *necessarily* call into question the conviction for resisting arrest, the court would have to find "to a logical certainty":

> that every act of violence—every kick, punch, etc.—by Dyer during the entire episode is charged in the [criminal] information . . . [and] we would have to say that every one of those violent acts was an act of self-defense

---

[7] Defendants present no argument on this point and do not even directly cite to the assault indictments as support for their assertion *Heck* applies.  (Doc. 24 at 5).

9

in response to the officers' excessive force and therefore would have been justified.

488 F.3d at 882.  The court concluded "[a] reasonable jury could, without too much trouble, find both that the defendants used excessive force, and that not all of plaintiff's violent acts were justified as self-defense."  Based on the alleged facts of this case and the testimony submitted to the Court to date, a reasonable jury could, without too much trouble, find some of Plaintiff's alleged acts were assaults and some of Defendants' alleged acts were excessive force.  Absent a showing of "logical certainty," the provisions of *Heck* are inapplicable.

## V. <u>Recommendation</u>

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** Defendants' special report be treated as a motion for summary judgment and, as such, it be **DENIED**.  The magistrate judge further **RECOMMENDS** this action be referred back to the undersigned for further proceedings.

## VI. <u>Notice of Right to Object</u>

Any party who objects to this report and recommendation must, within **fourteen (14) days** of the date on which it is entered, file specific written objections with the clerk of this court.  Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed

findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. **Objections not meeting the specificity requirement set out above will not be considered by a district judge**.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon counsel of record.

DONE this the 4th day of  August 2014.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE