IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JOSHUA RESHI DUDLEY, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 7:11-cv-04170-LSC |
| | ) | |
| OFFICER GANDY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OF OPINION

I.  Introduction

This case was tried before the Court in a non-jury trial on February 9th and 10th of 2015. The Court heard testimony from the Plaintiff, as well as the five original Defendants. In addition, the Court received and viewed evidence including videos from the Tuscaloosa County Jail showing part of the incident, medical records and photographs of Plaintiff's injuries, and certified copies of felony convictions of the Plaintiff, including his convictions for assaulting two of the detention officers in the disturbance made the basis of this suit.

II.  Findings of Fact

The Plaintiff, Joshua Dudley ("Dudley"), was a pre-trial detainee in the

Tuscaloosa County Jail on July 13, 2011, when he was involved in an altercation with the Defendants, each of whom was a detention officer at the jail. At the time of the altercation, Dudley was housed in a disciplinary unit within the jail and physically located in a cell with other inmates. The inmates in his cell refused an order from detention officer Lance Channell to remove a blanket they had placed over a light. The officer then entered the cell to remove the blanket himself and was assaulted by one of Dudley's cellmates, Courtney Walker, who was pending trial on capital murder charges. Another detention officer, Robert Little, pulled Channell from the cell and Walker continued to fight with officer Little until backup arrived.

Supervisors Alan Gandy and Percy Sample were the first to respond. Officer Gandy entered the cell with the inmates and removed the blanket covering the light. Upon determining that inmate Walker had struck officer Channell and officer Little, Gandy turned to escort Walker from the cell, and Dudley struck Gandy on the side of the face with such force that it fractured Gandy's eye socket. Dudley continued his attack on Gandy, and officer Little tried to assist Gandy in restraining Dudley, while officer Sample, officer Channell, and another officer restrained Courtney Walker.

The officers were able to get one of Dudley's hands secured in a handcuff, but because of his resistance were unable to secure the other. Having only one of Dudley's hands in the handcuff made him particularly dangerous in that he could continue his

attack upon the officers using the open side of the handcuff as a weapon. Dudley can clearly be seen on video exiting the cell unrestrained. Once outside the cell, the officers were able to secure both hands, but Dudley continued to resist the efforts of the officers to restrain him and escort him to a holding cell. At one point, Dudley can be seen running around the dayroom outside his cell attempting to elude the officers. Dudley asserted at trial that the officers were attempting to strike him while he was running around that room, but it is clear that they were attempting to grab him rather than strike him.

Officer Williamson, who was not present in the cell or dayroom when the altercation occurred, assisted in escorting Dudley to a holding cell. Video footage from the jail clearly shows Dudley continuing to resist the efforts of the officers as he was escorted to the holding cell. At one point Dudley, while resisting as he was being walked to the holding cell, causes himself and the officers to fall. It was at this point that it became necessary for officer Williamson to secure Dudley by holding him around his neck. It is clear by the way that Dudley continued to walk through the halls of the jail, however, that neither his breathing nor his circulation was affected.

Even after being placed in a holding cell, Dudley resisted the efforts of the officers to remove the handcuffs. Shortly after Dudley was placed in the holding cell, he and officer Gandy were transported to the local emergency room for treatment of

their injuries.

The Court finds that Dudley was not truthful about the events that occurred that day. For example, Dudley testified that one of the officers coiled handcuffs around his fist and struck him in the mouth extremely hard. However a photo of Dudley after the incident clearly shows that he had no cuts, scrapes, gashes or wounds of any type on or around his mouth. Additionally, it is clear to the court that Dudley's version of the events is implausible with regard to several other allegations. First, under Dudley's version of the facts, there is no way officer Gandy could have suffered a fractured eye socket. Second, Dudley testified that these officers attempted to drag him back into the cell so they could maliciously beat him. It is clear to the Court from the video evidence that everyone in that cell, officers and inmates alike, was trying to escape the area due to the release of a pepper spray. Third, Dudley was clearly not restrained when he came out of the cell. The video shows two officers still struggling to handcuff him outside the cell. If Dudley had been compliant as he testified, there is simply no way his handcuffing would have been so difficult.

Moreover, the video evidence clearly shows that after Dudley was handcuffed, he did not lie down as instructed by the officers. Instead, the video shows Dudley getting up and running toward the area of the dayroom where another combative inmate was struggling with officers while being handcuffed. Such evidence supports

the officers' testimony that Dudley resisted their orders throughout the entire incident.

Additionally, the video shows both Dudley and his cellmate being led to holding cells after they have been restrained. Dudley's cellmate is walking upright and being assisted by a single detention officer without incident, while Dudley is leaning and pulling away from two detention officers and even causes all of the parties to fall at one point. At this point it becomes necessary for officer Williamson to employ a vascular neck hold to force Dudley to walk to the holding cell. This evidence supports the officers' version of the events, not Dudley's. Dudley testified that officer Williamson was "choking" him while attempting to place him in a holding cell. However, it is clear that had Dudley been choked or unable to breathe, he also would have been unable to walk to the holding cell, yet the video clearly shows him walking, albeit resistively, to the holding cell. Further, Dudley was not gasping for breath at any point after being released by Williamson.

Dudley also testified that the officers "slammed" his head into a concrete bench several times inside the holding cell. The video evidence clearly shows that this never occurred. Instead, Dudley's upper body and head are being restrained so that the handcuffs can be removed. The Court finds that Dudley is clearly lying about the events that transpired in the jail on the day made the basis of this lawsuit. The Court

also finds that the video evidence never shows any of the Defendants applying excessive force or applying force for any purpose other than gaining Dudley's compliance and cooperation.

At the close of Dudley's case, he conceded that Defendants Lance Channell and Robert Little were due judgment as a matter of law, because he had failed to produce any evidence that either had used excessive force against him. As a result, both were dismissed from the case. The case proceeded against the remaining three Defendants.

III.  Conclusions of Law

Claims of excessive force against pretrial detainees are governed by the Fourteenth Amendment to the United States Constitution, rather than the Eighth Amendment, which applies to such claims by convicted prisoners. However, the applicable standard is the same:

> We thus apply the excessive force standard first enunciated in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973), adopted by this Circuit in *Williams v. Kelley,* 624 F.2d 695, 697–98 (5th Cir.1980), and applied in this Circuit thereafter in the Eighth Amendment context. *See e.g., Campbell v. Sikes,* 169 F.3d 1353, 1374–77 (11th Cir.1999). Under this standard, "whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Brown v. Smith,* 813 F.2d 1187, 1188 (11th Cir.1987) (internal quotation marks omitted); *see also Campbell,* 169 F.3d at 1374.

*Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).  In such cases, the Eleventh Circuit has repeatedly held that a constitutional violation hinges on whether a detention officer's use of force "shocks the conscience". *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).  To evaluate whether actions shock the conscience, the following factors must be considered: (1) the need for force; (2) the relationship between that need and the amount of force used; and (3) the extent of the resulting injury.  *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).  In addition to those three factors, the Eleventh Circuit considers as fourth and fifth factors "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them, and any efforts made to temper the severity of a forceful response." *Id*.  Lastly, when a court considers whether the defendants' use of force was excessive, it must "give a wide range of deference to prison officials acting to preserve discipline and security." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

> When the "ever-present potential for violent confrontation and conflagration," *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977), ripens into *actual* unrest and conflict, the admonition that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *Rhodes v. Chapman, supra,* 452 U.S., at 349, n. 14, 101 S.Ct., at 2400, n. 14, carries special weight.  "Prison administrators ... should be accorded wide-

> ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S., at 547, 99 S.Ct., at 1878. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

*Whitley v. Albers*, 475 U.S. 312, 321-22, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986).

To succeed on his claim against each of the remaining Defendants, Dudley must prove that each of them intentionally beat him with the purpose of causing harm, and not in a good faith effort to restore order. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 998-99, 117 L.Ed.2d 156 (1992). Although Dudley maintains that he was fully compliant with the officers, the evidence plainly contradicts that assertion. Utilizing the factors outlined in *Whitley*, it is clear that there was a need for force. The officers were attacked by an inmate who continuously refused to comply with their commands. And this Court finds, as all five officers testified at trial, that Dudley not only resisted their efforts to detain and subdue him, but actively fought them. Consequently, under *Whitley*, there was a need for force. Here, the amount of force

used by the officers was reasonable. The evidence demonstrates that Dudley joined in Courtney Walker's attack on the detention officers, refused to be handcuffed and resisted their efforts to restore discipline within the jail. The use of physical force by the detention officers in defending themselves and in attempting to handcuff and transport Dudley was in direct relation to his resistance and refusal to cooperate with their commands. The resulting injury to Dudley was minimal and required no more than a brief trip to the hospital. While Dudley did receive sutures or staples to his scalp, none of his injuries were permanent in nature, suggesting that the force used by Defendants was not excessive. Lastly, the threat to the safety of the detention officers was extremely high during the incident. The cell door was open; the inmates in a disciplinary dorm, including an inmate awaiting trial on capital murder charges, were fighting the detention officers; pepper spray had been disbursed; and officer Gandy had suffered a fractured eye socket from Dudley's attack, all prior to the inmates becoming restrained. It is easy for the Court to understand how Defendants perceived these circumstances as a severe threat to the order and safety of the jail. Consequently, it is the opinion of the Court that the force used by Defendants was not excessive and did not violate Dudley's constitutional rights.

IV.   Conclusion

Having carefully considered all of the evidence, it is clear that Dudley has failed

to produce any substantive evidence that Defendants' actions were not a good faith effort to restore order. And, given the circumstances surrounding this event, Defendants' actions simply do not shock the conscience. Therefore, Dudley has failed to establish that a constitutional violation has occurred. Each of the Defendants is entitled to a final judgment in his favor.

A separate order will be entered.

Done this 23rd day of February 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177825